Good morning, and may it please the Court. My name is Jeremy Karp, and I represent the appellant Alexander Thomas Hebrard. I reserve three minutes for rebuttal. All right. Counsel, please be reminded that the time shown on the clock is your total time remaining. Very well. Thank you. At issue in this appeal is whether the District Court erred when it sua sponte dismissed Mr. Hebrard's procedural due process claims as barred by the favorable termination rule from should find that the District Court did err for any one of three reasons. First, the District Court erred when, after nearly three years of litigation, it raised heck on behalf of the State because the State had waived heck as an affirmative defense. The State does not dispute that it waived heck, and this panel should find that the waiver is dispositive of the appeal. Counsel, you know there's a difference between waiver and forfeiture. Yes, Your Honor. What acts, intentional acts of the defendant do you claim are in the record that support waiver as opposed to forfeiture? Yes, Your Honor. Very briefly, the first point I'd like to make is that in this appeal, the State has not disputed that it waived the defense. To address your question, looking at the record in the District Court is there, are you stating that if the State fails to claim waiver, there can be no waiver? What I'm saying is that the State on appeal has, in their answering brief, not disputed our primary argument, which is that they waived heck as an affirmative defense in the District Court. And now, of course, this panel has discretion to revive that, essentially the defense was not waived on behalf of the State, but it would have to be a pretty extraordinary circumstance where justice would require it to revive that defense and the waiver argument on behalf of the State. Now, Judge Bea, to address your question. Counsel, before we leave that point, is it your argument that the heck bar was waived because it was not raised in the answer or the summary judgment motion? Is that the genesis of your argument that it was waived? That is part of it, Your Honor. What's the other part? So if it was not simply because they failed to raise it in the answer or the summary judgment motion, what else supports the argument that it was waived? First of all, just the sheer passage of time. It was nearly three years in the- That's not affirmative conduct. Generally, waiver is an intentional relinquishment of a known right. And so the passage of time would not be intentional. So is that why you have the failure to raise it in the answer, the failure to present it in the summary judgment motion, and the passage of time? Anything else? Additionally, the State and the same counsel for the State at the trial level did raise heck in a number of other cases that were litigated at the same time as this case. And I think it would be fair to infer from that that the decision not to raise it in this case was a knowing and intentional choice to withhold the defense. Have you gone through all the evidence of affirmative action which constitutes waiver? Yes. In this case, yes, Your Honor. Thank you. The State, rather than contesting that it has waived heck as an affirmative defense, responds that heck, rather, is not waivable as an affirmative defense. It urges the panel to treat heck as it would an abstention doctrine, and it reasons that the panel should do so because abstention defenses are not waivable. Was the Court bound by the State's waiver? So in order for the State, for the Court to be precluded from sui sponte raising the issue, it would have to be bound by the State's waiver? That's correct. Is it your argument that the Court was bound by the State's waiver? Yes. The Court was bound. And if we look at Day v. McDonough, which is a Supreme Court case, and Wood v. Milliard, another Supreme Court case, the Supreme Court addressed the distinction between forfeiture and waiver. Both cases were in the context of habeas petitions, and they specifically looked at threshold habeas defenses like exhaustion of State remedies, procedural default, statute of limitations. And the Court said, look, these defenses, they implicate concerns that go beyond just those of the parties. In fact, they implicate, as do abstention doctrines, comity concerns, the good relations between State and Federal courts. And the Court said that when the State forfeits a threshold habeas defense, including those that implicate comity considerations, the Court, the district court or the court of appeals may, in extraordinary circumstances, revive that defense on behalf of the State. It held, though, that it would be an abuse of discretion if the State were to waive one of those defenses and the district court were to then revive that defense on behalf of the State. So the distinction between forfeiture and waiver is important. Even if, I suppose backing up, the State has, again, argued that despite its waiver, heck is not, heck may be raised by the district court sua sponte at any time. It does not matter what choice the State made. And, again, pointing to the abstention doctrines as the analog, the appropriate analog. There's several problems with the State's argument in comparison to abstention doctrines. First, virtually all of the cases cited by the State to support the proposition that the abstention defenses cannot be waived are cases that deal with forfeiture, not waiver. Now, as I just mentioned, the distinction between forfeiture and waiver is important. And in the most recent cases, Day and also Wood, the Court pointed out that a forfeiture defense can, a forfeited defense, excuse me, may be raised. Sua sponte, a waived defense may not. Second, even assuming that the, that abstention defenses cannot be waived, the State's unable to cite any case for the proposition that heck is equivalent to an abstention defense or that heck itself cannot be waived. To the contrary, in Muhammad v. Close, 540 U.S. 749, the Supreme Court refused to consider the State defendant's argument for why a defense could have been waived by the State. Although the Court had considered and rejected a different theory for why the plaintiff's claims were heck-barred, one that had been preserved by the State in that case, we would expect, the panel would expect the Court to hear and consider any heck theory if the defense were truly unwaivable, such as a jurisdictional defense. Counsel, I'm at the Day case. Could you point to the precise language in that case that you're relying upon to support the proposition that the State, that the Court was bound by the State's heck, waiver of the heck defense? Point me to the page and the language that you're relying upon. Your Honor, Day concerned was a — I just want the page and the language. I'm sorry. I have the language. I don't have the page. I will, I'll provide the language. The language is, quote, we would count it an abuse of discretion to override a State's claim. It is a limitations defense, end quote. Right. I was — the precise question was whether or not the Court erred in solus fonti raising the heck bar, and you said it was waived. And I was curious if you had a case that discussed the heck bar specifically. The case, that closest case that I have is Muhammad v. Close, which is, again, a Supreme Court case where the State attempted to raise a new heck argument late in the appeal, and the Supreme Court refused to consider the argument and stated that it was refusing to do so because the defense had been waived. Well, that's different than a court's solus fonti raising a legal argument. I agree. Because, you know, we've often held that courts are not bound by the legal mistakes of the parties. And so if a court has a legal concern and raises its solus fonti, it would be unusual to say that the court can't do that. That's why I was asking you for a case that says that specifically the court is bound in that context. There is no case that speaks specifically to heck and heck waiver. But the Day and the Court, and both involve defenses that, like heck, are based, are rooted in comedy considerations. Both of those cases state that it would be an abuse of discretion for a district court in that circumstance where a defense has been waived based on the principle of party presentation. The court should not be raising the defense on behalf of the State. That's a very broad proposition. And sometimes the Supreme Court speaks broadly because it's, you know, making law for the entire country for those issues. So I would be more confident in that precept if there were specifically a Supreme Court case that said that even if a court gives the parties the opportunity to weigh in on the issue, it can't solus fonti raise that. Because that's what happened here. It's not like the court solus fonti raised it in its decision without giving the parties the opportunity to weigh in. In this case, the court gave the parties the opportunity to weigh in. And so that's why I'm having a little bit of difficulty saying that the court was bound by the waiver. I understand your concern. I think, very briefly, the two points I'd raise is, first, that the State, by that point, had already waived the defense. And if we look at Day and we look at Wood, those are, you know, habeas corpus cases that interpret the Anti-Terrorism and Effective Death Penalty Act. To your concern about broad pronouncements, the Supreme Court has been no friend to habeas petitioners. And they're very stingy with lending a hand to those types of petitioners. And so, yes, Your Honor. Sure, Counselor. I just want to shift gears for a moment because I have questions about the application of our en banc decision in Nettles v. Grounds. In this case, where my reading of Nettles v. Grounds is that this court said even when a claimant there was a habeas petitioner, seeks restoration of good time credits, that does not necessarily sound in habeas unless the restoration of good time credits is shown to necessarily certainly affect the time served. And that that's, you know, just the fact that good time credits might be restored does not necessarily mean that's true. So it's not categorical in the court. In fact, in that case found that the claim that was brought in habeas should have been exclusively brought under Section 1983. And so in this case, I'm having trouble seeing from the face of the pleadings or even the state's response to the supplemental briefing that we can be certain under Nettles that the restoration of good time credits in this case would actually affect Hebrard's time served. I don't know what his conviction was. I don't know what his sentence was. I don't understand what under the state statutory scheme how the restoration of good time credits would affect his sentence, if at all. So can you address that? Is there anything in the record that demonstrates that on the face of the pleadings? I'm not, I'm not aware of anything. I can speak to what is stated in the pleadings. And that is that Mr. Hebrard has described two separate courses of criminal conduct, a credit, a scheme for credit card fraud related to a prison trust account and an alleged scheme for smuggling drugs to the prison. Based on those two separate courses of criminal conduct, there were three convictions that resulted from a single hearing and five different sanctions. Only one of which is the loss of good time credits. Now, because this Court has held that HECC is an affirmative defense, it was not, Mr. Hebrard was not required to plead around the defense. It is not an element of his claim. He is not required to show that HECC would not be a bar. It is only if his claim would be unavoidably HECC barred from the face of the complaint. We cannot make the connection between the loss of good time credits and his discrete procedural due process challenges. He could, for example, and he has, challenged the availability of witnesses with respect to the credit card fraud scheme. If the prison official was wrong in denying him the ability to call that witness, it would call into question one of the convictions, but it would not call into question the other one. And we do not know the relationship between proving the facts of the credit card fraud scheme and the convictions and the convictions and the loss of good time credits. So it is not, you cannot say from the face of this complaint that prevailing on any given procedural due process claim would necessarily imply that the loss of his good time credits was invalid. I'd like to, if the panel doesn't have any more questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, counsel. Thank you. Thank you. May it please the court, counsel, John Zunkel, the Corsi for the state. The district court correctly dismissed plaintiff's claims as heck barred for three reasons. First, the court could sui sponte res heck. Second, heck bars his claims. And third, plaintiff did not diligently pursue his habeas corpus actions. What was the third? That plaintiff did not diligently pursue his habeas corpus actions. I'd like to begin with talking about waiver because I part ways with my friend on the other side about whether we waived the defense or not. We don't believe that we waived the defense. We raised it. I mean, we had not raised the affirmative defense until the summary judgment, the district court, sui sponte, raised the issue. But at that point, we asserted that heck did apply. And then since then, you know. You didn't raise it until the court raised it. But that's right. And then after that point, you know, in our briefing now, we continue to raise that heck applies. And therefore, I don't see that we waive the defense. And so I say, counsel, can you explain to me how the state met its burden under Nettles to demonstrate that the restoration of good time credits would necessarily affect the defendants, excuse me, the plaintiff's time to be served? Yeah. So in his complaint, I mean, he challenges there's, you know, he was charged with four offenses and had a single disciplinary hearing on all four offenses, you know, and, you know, drug charges, racketeering. And at the at the conclusion of that hearing, the state found that he had violated. I think you're missing the question because under under the Supreme Court's holding in Haman, the relevant sentence and conviction and sentence are the underlying conviction and sentence. And under this court's holding in Nettles, the restoration of good time credits does not categorically necessarily affect time served. That's something that has to be shown based on the specific facts of the case and the statutory scheme at issue. And in fact, in that case, the court said this court said that the restoration of good time credits would not necessarily affect that defendant or that plaintiff's sentence. And therefore, his claim did not sound in habeas. So merely stating that the, you know, revocation of good time credits was a sanction imposed and even assuming that Hebert's claim would necessarily lead to the restoration of good time credits. How does what in the record can you point to that proves to me that the restoration of good time credits would affect defendants time served under Nettles? I mean, I guess I apologize. I cannot point you to something specifically in the record. I mean, I think generally that the way that the Oregon statutory scheme works is when a person has earned time credits that allows them to be released from prison earlier as a matter of law. Counsel, may I ask you a question? Has the appellant affirmatively waived his good time credits? No, Your Honor. I didn't think so. And so to return to your question, Judge Sung, I mean, so I think as a matter of law, he was he had his 27 days of earned time credits rescinded, which then has the legal effect of him not being released from prison. I don't know if it's a categorical rule, but at least under the way that Oregon law works, that, you know, it would cause him to be released later than he otherwise would have. Is there anything in your answer or in your response to the district court's supplemental briefing order that explains specifically the application of Oregon's good time credits statutes to the defendant showing how it would affect his time served? No, Your Honor. But but I also point to the fact that Plaintiff himself has also not explained, you know, that habeas corpus would not lie for that reason. Well, isn't it your the state's burden to show that heck applies? I mean, I guess under this court's case in Washington, it seems like that this court treats it as, you know, more closely resembles an affirmative defense and other things. And so I guess in that way, yes, that's possible. But I think as a matter of law, that's, yeah, at least I understand how it works. Counsel, wasn't Nettles a little bit different, though, because it wasn't it wasn't the loss of good time credits that was an issue. It was whether or not the expungement of the violation would lead to an earlier parole. So it wasn't good time credits per se that was at issue in Nettles. It was the existence of the rules violation on the record that might lead to more lengthy stay due to not getting parole. So that's a little bit different scenario than the direct application of good time credits. I agree with that, Your Honor. And I mean, I guess turning back to my first point, I mean, I think that the district court, Consuelo Esponte, raised this and I point to the Supreme Court opinion in McDonough, where the Supreme Court talked about the purposes and the rationale behind PECC. It's not something that's merely a pleading require. It's not just something that merely a claim of the defense, but that the court was conflicting state law and federal law judgments are not something that's as a matter of, you know, younger abstention and other doctrines that the court was concerned about that was in McDonough. And I'd like to also talk a little bit about prejudice, you know, plaintiff argues that he was prejudiced because we did not raise our heck bar in our answer. But the rules of civil procedure allow the district court to amend or allow a party to amend their response of pleading at any time. And so justice requires. And so here, in effect, that's what happened. You know, the summary at the summary judgment stage, the district court said, doesn't this apply? And at that point, you know, the state said, yes, it does. Excuse me. And so, you know, so it's this is just the raising of an affirmative defense that happens all the time in amended pleadings. And the second point is about prejudice, that somehow our delaying raising heck in our answer prejudiced his ability to bring a habeas corpus action. And I point to the facts of this case are that by the time that we had filed our first answer, the statute of limitations for the habeas action had already run. And so plaintiffs, the underlying actions happened in 2018, and that was when the final order was signed. There was an appeal that was denied in 2019, and then we didn't file our answer until May of 2020. So the one year statute of limitations had already expired by the point that we had filed our answer. And so whether or not we raised our answer, raised heck in our first answer or whether we raised it three years later is kind of beside the point as a practical matter. Counsel, how do good time credits work? Do good time credits apply to the total prison sentence or do they apply to each conviction? How does it work if a prisoner gets good time credits? Does that apply to the total sentence? It depends on each prisoner. So, you know, in Oregon, 137-700, ORS 137-700 is Measure 11, which is an act by the voters that has mandatory minimums. And pursuant to those convictions, a person serving time in prison cannot receive earned time credits as a result of those convictions. But for other convictions, the earned time credits serve to reduce the amount of time served in prison. And I don't know exactly how it works, but the Department of Corrections in Oregon does some sort of formula calculation where they figure out which earned time credits can apply to which one, to which conviction. So we don't even know on this record whether which category Hubert falls into. Correct? I guess that's true, Your Honor. So how can we say that it necessarily would shorten his term if we don't know which conviction the good time credits apply to? In Nevada, the good time credits apply to the prison sentence. Once the total prison sentence is calculated, then the good time credits are applied day for day for whatever the total prison sentence is. That's right. But you're telling me that Oregon doesn't work that way. I mean, there are some crimes that are more severe that the voters have determined to make them not earn time credits, not be. But that's not this case because there were good time credits in. That's correct. So that would not be this scenario. That's correct. You couldn't even. That's right. So if there is a case where a good time credits are applied, are you telling me that in the state of Oregon, it depends on the conviction whether or not the good time credits are applied or is it applied to the total prison sentence? That's an important point here. I mean, it's hard to answer in the abstract because each. Well, we're not. It's not the abstract. It's this case. I mean, they're applied to each conviction. The prison term for each conviction. So what was he convicted of here? I don't think we know that in the record. So how can we know then whether or not the good time credits would lessen his prison sentence if we don't know what the sentence is imposed for? I mean, I think the answer is that people that are subject to 137-700 crimes do not even earn earned time credits. We're not talking about that. You know, he earned good time credits because that's what's at issue here. Right. So, but what we're trying to get you to tell us is did that apply to the total prison sentence? And I think you're telling us it applies to each conviction. And I don't know how that works. Well, I mean, I'm sorry if I'm not being as clear as I wish I were. I mean, so like if when a person is convicted of crimes, some of those crimes are not subject to earned time credits and they cannot. But then the crimes that they can be, then the total prison term is. So if you have a two year prison term and you get 27 days of. Go a little bit slower. Oh, sorry. We're having a little bit of trouble following you. Are you telling us that under Oregon criminal law, there are crimes for which there are no good time credits? That's correct. And so when you take a look at a record of conviction of somebody who does have good time credits, that means he's been convicted of crimes for which there are good time credits. That's correct, Your Honor. And is there anything in the record that establishes that in Oregon, prisoners never receive good time credits if under measure 11, they're not actually eligible for them? I cannot point you to anything in the record that says that. OK, so we've gotten this far that at least there are good time credits in this case. So we can assume that this was not a prisoner who was ineligible for good time credits. Otherwise, the good time credits would have never been there. So the next question I have is when a sentence is imposed, does the court impose a total sentence? Generally, what the court says is, you know, we're giving for this crime this much, this much. And then the total sentence is this. Is that what happened in this case or do you know? I'm sorry, is the court asking about whether the disciplinary sanctions or the criminal conviction? What was the sentence imposed on this defendant? Do we know? I don't think we have that in the record. From your experience, would it be one sentence imposed or multiple sentences imposed? You know, when we get the judgment of conviction, it says this person is sentenced to this number of years. We have a number. Is that true in Oregon? Not in my experience, Your Honor. That usually is per conviction. So it's a count one, robbery one. The term of incarceration is. To run concurrently or consecutively. So we know what the time is. If it runs concurrently, we know that what the total time is. If it runs consecutively, we know what the total time is. Right? That's correct. So that's how Oregon works. Just pretty much like every other state. So you have a total number of years that the person is going to serve. After you look at each sentence, whether it's imposed consecutively or concurrently, then you know what the total sentence is. Correct? That's generally true. I mean, subject to some, there are certain crimes that they're indeterminate sentences like life without parole or life with prison. But for the most part, that's correct. Okay. So if there's a total sentence imposed, would the good time credits count against that total sentence imposed? Yes, Your Honor. That's what I was trying to get to. Long way to get there. Okay. I'm sorry. If he had an indeterminate sentence. Because we don't know whether he had a determinate sentence or an indeterminate sentence. Correct? On this record, we have no idea what his sentence was. Correct? That's correct. I don't know if you have an indeterminate, I mean, there are very few crimes for which they're indeterminate sentences. And I don't know, I struggle a little with it because if you have a life sentence, then the Board of Parole then sets your term of release. And that's not directly affected by the good earned time credits because of the. And then we would be in the Nettles box, correct? If he has an indeterminate sentence. So on this record, do we know whether he has an indeterminate or determinate sentence? We don't know, Your Honor, but I'm not entirely sure that's correct because the Board of Parole sets a release date and it's upon that release date that the person is then eligible for release. And so it's not, yeah. But that was the Nettles case that he was saying that he could get an earlier parole date if that violation was expunged. So, but I didn't know that this case was an indeterminate sentence. I don't know. The record is really not clear on any of this. I agree, Your Honor. These arguments were not raised to the district court. So it's a little bit unfair for us to be going down this road, I think. And good time credits can be lost, can be taken away from them. That's correct. And that's exactly what happened here. And I guess with my final 30 seconds, I would like to just point the court to ER 113 where the court or the prison disciplinary order is it's for one violation that resulted in all of these sanctions. So, you know, my friend on the other side tries to make a distinction between the drug convictions and the racketeering convictions, but all of the sanctions were for one violation. And then the other two convictions had all of their sanctions merged is the language that the order used. So unless the court has other questions, we'd ask you to affirm. All right. Thank you, counsel. Thank you. Thank you. Very briefly, the state did not, as I read their answering brief, they did not raise the argument about waiver. Now, this court has discretion to revive that argument, but it would only be where it was in the interest of justice. Now, the state has twice failed to raise an argument. I fail to see how rescuing the state here would be in the interest of justice. The second point is that it is the state's burden, as this panel has pointed out a couple of times now, to prove, to establish a tech defense. This was dismissed at the PLRA screening stage, set the 12B6 standard. The court is now looking outside of the record to a significant degree. As you've, Judge Sung has pointed out several times, we do not know from the complaint. There is simply not enough information in the complaint to determine the relationship between the loss of good time credits and the multiple convictions that resulted from his disciplinary proceeding to say that prevailing on any given one of his due process challenges would necessarily result, imply the invalidity. And then, if I may, my final point, there is a line of cases in the Ninth Circuit, Sanford v. Motts, Smith v. City of Hemet, and Lemos v. County of Sonoma, that deal with situations analogous to this one, where you have multiple incidents where the record is not clear, and those were decided at summary judgment. This was not. Mr. Hebbard did not have an opportunity to conduct discovery or come forward with evidence where the record is not clear of the basis for the conviction. And the court says, because the basis is not clear, you may come forth and challenge through a 1983 action, all the bases, and that would not necessarily imply the invalidity of the conviction. If the panel has no more questions, I will conclude. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the morning. We are recessed until 930 a.m. tomorrow morning. The session of the Ninth Circuit Court of Appeals is now adjourned until tomorrow. Thank you.
judges: RAWLINSON, BEA, SUNG